UNITED STATES of America

v.

Audley EVANS Patrick Watson
C. Hayward Chapman

No. 8:00–CR–75–T–30–TGW.

United States District Court,
M.D. Florida,
Tampa Division.

July 16, 2001.

Arnold D. Levine, Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for Audley Evans (1), defendants.

David A. Maney, Maney, Damsker, Harris & Jones, P.A., Tampa, Ellis R. Faught,

Jr., Law Offices of Ellis R. Faught, Jr., Brandon, for Patrick Watson (2), defendants.

James E. Felman, Kynes, Markman & Felman, P.A., Dewey Frank Winkles, Swope Law Group, P.A., Tampa, for C. Hayward Chapman (3), defendants.

Elizabeth Evans, Temple Terrace, Pro se.

Claude Hines Tison, Jr., Claude H. Tison, Jr., P.A., Tampa, for C & C Partners (88888), a Georgia general partnership, interested party.

Michael J. Gasdick, Stanton & Gasdick, P.A., Orlando, for Mccoy Federal Credit Union (88888), interested party.

Robert E. O'Neill, Pamela K. Cothran, U.S. Attorney's Office, Middle District of Florida, Tampa, for U.S. Attorneys.

### ORDER ON DEFENDANTS' POST-TRIAL MOTIONS

MOODY, District Judge.

This cause came on for consideration on Defendants' post-trial motions for judgment of acquittal and for new trial (Dkts. 194, 222, 226, 229, 246, 262) and the Government's responses thereto (Dkts. 233, 234, 248). In addition, the Court considered Defendant Evans' Motion to Compel the Government's Production of Grand Jury Minutes and Transcripts of Interviews with Bill Williams (Dkt. 244) and the Government's response thereto (Dkt. 249). After consideration of the arguments of counsel on April 13, 2001, the motions, responses, supporting and opposing memoranda and the Court file in this matter, the Court finds that Defendant Evans is entitled to judgment of acquittal on one count of making a false statement (Count 125). The jury's guilty verdict will not be disturbed on the other counts against Defendants Audley Evans and C. Hayward Chapman (hereinafter referred to as "Evans" and "Chapman," respectively).

### FACTUAL BACKGROUND

Defendants Evans and Watson were initially charged with wire fraud in a one-count indictment. On March 28, 2000, the Government filed a first superseding indictment charging Defendants Evans, Chapman and Watson with 125 counts of, *inter alia*, wire fraud, conspiracy, bribery (concerning program receiving federal funds), gratuity, money laundering, and making false statements to a federal agency. On August 15, 2000, the Government filed a second superseding indictment, adding an additional count (count 126) against Defendant Chapman for income tax evasion.

Defendant Evans served as the Executive Director of the Tampa Housing Authority ("THA"), an entity created by the City of Tampa to develop and operate public housing units for eligible families. The THA received funds from the United States Department of Housing and Urban Development ("HUD"). As part of its housing authority business, THA entered into contracts with contractors and resident-owned businesses pursuant to established procurement procedures.

Initially, Evans served as the interim executive director (from November 20, 1987, through July 31, 1988) after which time he became the executive director until August 30, 1996, and then acted as an unpaid consultant through December 30, 1996. On or about July 1996, Defendant Evans also served as the Executive Director of Meridian River Development Corporation ("MRDC"), a non-profit corporation created at the direction of THA in 1995 to provide and develop affordable housing opportunities for low income persons on behalf of THA.

Defendant Chapman is a principal in Bradley & Bradley Development Group, Inc. and Concorde, Inc., both companies that contracted with and received funds

from THA. Defendant Patrick Watson ("Watson") is a Florida physician who received a portion of the funds from THA's resident contracts through joint ventures with other companies.

In his capacity as THA's executive director, Evans was charged with directing THA contracts and authorizing payments thereunder to certain contractors in return for payments to him or to his benefit. Bill Williams ("Williams") testified at trial about making cash payments to Evans in connection with contracts Williams or companies controlled by him received from THA. Williams pled guilty to one count of bribery.[1] Also, a THA employee who worked directly under Evans, Angelo DePaul ("DePaul"), pled guilty to one count of making a false statement and misprision of a felony under 18 U.S.C. § 4.

A jury trial commenced on February 5, 2001, and a verdict was rendered on February 28, 2001. Defendant Chapman was found guilty on counts 69 through 72 (gratuity) and acquitted on all other counts. The jury rendered a guilty verdict against Defendant Evans on fifteen counts: counts 8 (conspiracy), 14 and 15 (bribery), 34, 35, 45–48 (gratuity), and 120–125 (making false statements). In a post-verdict proceeding, the same jury acquitted Defendant Chapman on charges of income tax evasion. Pursuant to Fed.R.Crim.P. 29, the Court granted Defendant Watson's Motion for Judgment of Acquittal at the close of Defendants' case.

Defendants Chapman and Evans have moved for judgment of acquittal on the jury's guilty verdict. Defendant Evans

also moved for a new trial based upon newly discovered evidence. The Court denies Defendants' motions for acquittal (except as to count 125) and new trial for the reasons set forth herein.

### *Standard of Review for Judgment of Acquittal*

 The starting point for the analysis of a motion for judgment of acquittal is Rule 29 of the Federal Rules of Criminal Procedure, which reads in pertinent part:

> The Court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

Accordingly, if the evidence is "insufficient to sustain a conviction" of such offense or offenses, a court may set aside a guilty verdict and enter judgment of acquittal. Fed.R.Crim.P. 29(a), (c). The Eleventh Circuit has stated that in deciding a Rule 29 motion for judgment of acquittal, a district court must "determine whether, viewing all the evidence in a light most favorable to the government and drawing all inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find the evidence established

---

1. Williams was sentenced in separate case, # 8:00–cr–105–T–24TBM, and has appealed his sentence. Defendant Evans filed a "supplemental and amended" response and motion for new trial (which was stricken by the Court as an improper reply under the Local Rules) in which he attempted to rely, in large part, on the transcript of Williams' sentencing and his plea agreement. *Even if the pleading* *was not stricken*, the only relevant argument made by Evans in this reply is that not all interviews and documents pertaining to Williams, including an offer of transactional immunity, were given to Evans' counsel. Defendant Evans failed to establish any entitlement to this material and any relevance or prejudice sufficient to warrant an acquittal or new trial.

guilt beyond a reasonable doubt." *United States v. Grigsby,* 111 F.3d 806, 833 (11th Cir.1997) *(citations omitted).* In this analysis, it is not necessary that the prosecution rebut all reasonable hypotheses other than guilt. *See United States v. Sellers,* 871 F.2d 1019, 1021 (11th Cir.1989). To challenge a jury's guilty verdict on the grounds of insufficiency of the evidence, it must be established that "no reasonable jury could have found Defendant guilty beyond a reasonable doubt on the evidence presented." *U.S. v. Ruiz,* 253 F.3d 634, 639 (11th Cir.2001). Under this standard, the Court finds that the Defendants have failed to meet their burden and their motions are denied as to all counts except count 125 (false statement).

### *Bribery (Counts 14 and 15)*

■ Defendant Evans was found guilty of two separate counts of bribery out of a total of nineteen bribery counts charged in the indictment. Evans was convicted of counts 14 and 15 for accepting roofing and carpeting services from Williams (or companies controlled by Williams) for a duplex owned by Caribbean Properties, Inc., a corporation owned by Evans, in return for being influenced in the performance of an official act as THA's director (awarding contracts to Williams).

Defendant Evans argues for acquittal on the grounds that there was insufficient evidence that Williams paid the contractors who completed the roofing and carpeting work. Evans further argues that there is no nexus, no *quid pro quo,* be-

tween the provided services and a specific official act performed by Evans and hence no bribery.

The bribery statute, 18 U.S.C. § 201(b)(2), provides, in pertinent part for bribe recipients, that a public official violates the statute when the individual "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: being influenced in the performance of any official act." [2] An official act is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy that is brought before a public official for a decision or to be acted upon." 18 U.S.C. § 201(a)(3).

The Court finds that there was sufficient testimony from Williams upon which a jury could conclude that the roofing and carpeting services were paid for by him or companies controlled by Williams as bribes.[3] Williams testified about providing roofing in the amount of $3,555 and carpeting in the amount of $1,689 ("something of value"), to a duplex owned by a company controlled by Evans in return for Evans, in his capacity as THA director, letting THA contracts to Williams and companies controlled by Williams. This is sufficient evidence from which a jury could find a nexus between the services provided and an official act as required by 18 U.S.C. § 201(b)(2). Accordingly, Defendant Evans' Motion for Judgment of Acquittal on Counts 14 and 15 is **denied.**

---

**2.** The bribery statute, 18 U.S.C. § 201(b)(1), provides, in pertinent part for bribe *donors,* that "[w]hoever (1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official, ... with intent to influence any official act" has committed bribery.

**3.** Williams testified that he was not an officer, director or shareholder of the various compa-

nies because Evans did not want Williams' name "out front" in connection with dealings with the THA. Williams noted, however, that "[a]ll the people at the Housing Authority knew [Williams] was involved" and Williams was a signatory on the companies' checks (with his wife) and payments were to his benefit. (Dkt. 176, pp. 77–82).

### Gratuity (Counts 34 and 35)

█ The jury similarly convicted Defendant Evans for violating the gratuity statute, 18 U.S.C. § 201(c)(1)(B), as it relates to the roofing and carpeting services provided to the Caribbean Properties duplex. Defendant Evans similarly argues that the Government failed to provide a link between the roofing and carpeting services provided to the Caribbean Properties duplex by Williams and the contracts Williams received from the THA.

The gratuity statute, in contrast to the bribery statute, prohibits non-corrupt conduct that gives an appearance of impropriety and is violated if a public official "otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts or agrees to receive or accept anything of value personally or because of any official act performed or to be performed by such official." 18 U.S.C. § 201(c)(1)(B). Defendant specifically cites to the Supreme Court's opinion in *United States v. Sun–Diamond Growers of California,* 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), to support the argument that a *specific act* must be identified and tied to the payments to constitute a gratuity. To do so, Defendant construes *Sun–Diamond* more broadly than this Court construes it.

*Sun–Diamond* involved a California agricultural cooperative collectively owned by 5000 growers that was indicted for, *inter alia,* violating the gratuity statute by making approximately $5,900 worth of gifts to former Secretary of Agriculture Mike Espy. At the time the gifts were made, the Department of Agriculture was reviewing two programs that would affect, among others, Sun Diamond. After being instructed that it did not have to find that the gifts to Secretary Espy were linked to an official act as long as they were given to him while he was in a position to make decisions that would benefit Sun Diamond, the jury convicted Sun Diamond on one count of unlawful gratuity.

On appeal, the D.C. Circuit concluded that the language of the jury instruction was "far broader" than the statute and required that the defendant give the gift with the intent to either reward a "concrete official act" already performed or "to increase the likelihood of one or more specific, favorable acts" would be performed. *United States v. Sun–Diamond Growers,* 138 F.3d 961, 966 (D.C.Cir.1998), *aff'd* 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607. The Supreme Court, in a unanimous decision by Justice Scalia, affirmed the D.C. Circuit's decision to reverse Sun Diamond's conviction, explaining that a "forward looking gratuity is a gift to a public official for a future act that the public official may have already decided to take and nothing more than 'merely a reward.' " *Sun–Diamond,* 119 S.Ct. at 1406; *see also* Klein, Charles B., *What Exactly is an Unlawful Gratuity After the ·U.S. v. Sun Diamond Growers?,* 68 Geo. Wash. L.Rev. 116, 120–21 (1999). In addition, the Court held that "the government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." *Id.* at 119 S.Ct. 1411.

In this case, at the Defendant's request, the Court added an additional sentence to the jury instruction on the elements necessary to find that Defendant violated the gratuity statute, which reads as follows: "[a] defendant may be found guilty of this offense only if it is proved beyond a reasonable doubt that there is a link between the thing of value conferred upon a public official and a specific act for or because of which it is given." Relying heavily on *Sun–Diamond,* Defendants argue that the Government failed to establish evidence of a specific link between the thing of value and the act by Evans.

With this jury instruction and the evidence presented at trial, a jury could find that Evans' acceptance of the roofing and carpeting services from Williams for the Caribbean Properties duplex was "because of an official act performed or to be performed by" Evans, namely Evans letting THA contracts to Williams or to companies controlled by Williams. Accordingly, the Court **denies** Defendant Evans' Motion for Judgment of Acquittal on Counts 34 and 35.

### Conspiracy (Count 8)

■ Defendant Evans was also charged with and found guilty of conspiracy to defraud the United States by defeating the "lawful government function of HUD in the operation of its program in a manner free from deceit, corruption and dishonesty" in violation of 18 U.S.C. § 371. The second superseding indictment charges that Defendant Evans, a public official, violated the following sections of Title 18 of the United States Code: §§ 201(b)(1) and (2),(A) and (B) and § 666(a)(1) and (2) (bribery); 201(c)(1)(A) and (B) (gratuity); § 1343 (wire fraud); § 1956 (money laundering) and § 1957 (engaging in monetary transactions in a value greater than $10,000 from unlawful activities). The indictment lists twenty-two overt acts that were allegedly undertaken to further the objectives of this conspiracy. Specifically listed as overt acts are payments of the costs for roofing and carpeting services

provided by Williams (or companies controlled by Williams) for a duplex owned by Caribbean Properties. Overt act 17 states that on or about August 21, 1995, Williams gave Defendant Evans $3,555, which was the cost to Williams for roofing for the Caribbean Properties duplex. Overt act 18 states that on or about August 23, 1995, Williams gave Defendant Evans $1,689, which was the cost to Williams for carpeting for the Caribbean Properties duplex.[4]

■ Defendant Evans presents at least ten arguments for acquittal on Count 8 in his written motion for judgment of acquittal, including the application of Wharton's Rule. For the reasons set forth in the Government's response, the Court agrees that Wharton's Rule is not applicable. Furthermore, the Court is not persuaded by the other arguments and finds that there was sufficient evidence for a jury to find at least two of these acts were committed by Evans.[5] There was also sufficient evidence of Evans' agreement with Williams to accept or agree to accept payment as required for bribery, and in this case, for conspiracy. Accordingly, the Court denies Defendant Evans' Motion for Judgment of Acquittal on Count 8.

### Gratuity—as to Defendants Evans (Counts 45 through 48) and Chapman (Counts 69 through 72)

■ Both Defendants Evans and Chapman were charged with violations of the gratuity statute[6] for payments made

---

4. Other overt acts include ten separate occasions on which it is alleged that Williams gave Defendant Evans "a quantity of cash." These payments were also separated into individual bribery and gratuity counts. Defendant Evans was not convicted of these counts.

5. Two overt or predicate acts are sufficient for a conspiracy conviction. *U.S. v. Terzado–Madruga,* 897 F.2d 1099, 1122 (11th Cir. 1990) (must establish "one or more of the overt acts" in furtherance of the object or purpose of the conspiracy). Moreover, as *discussed supra* in relation to Counts 14, 15, 34,

and 35, the jury convicted Evans for bribery and gratuity for payments made in connection with the carpeting and roofing for Caribbean Properties. The jury's guilty verdict on count 8 for conspiracy is consistent with these convictions.

6. The gratuity statute is violated by donors who "directly or indirectly, give, offer, or promise anything of value to any public official ... for or because of any official act performed or to be performed by such public official." 18 U.S.C. § 201(c)(1).

to Evans (or for the benefit of Evans) from Concorde, Inc., a company controlled by Defendant Chapman. Specifically, counts 45 (Evans) and 69 (Chapman) involved a $50,000 loan obtained by Evans for which Concorde put up a $25,000 certificate of deposit ("CD") as collateral. The CD was subsequently returned to Concorde with interest. Counts 46 through 48 (Evans) and 70 through 72 (Chapman) for payments of $14,537.16, $26,512.08, and $83,950.76 respectively, involve mortgage payments made by Concorde to benefit Caribbean Properties, a corporation owned by Defendant Evans.[7]

Defendants' position is that these payments were made by Concorde (controlled by Chapman) to acquire a 50% interest in Caribbean Properties (owned by Evans). Both Defendants testified about their agreement to the transfer.[8] However, there was sufficient evidence before the jury to support the finding that this was a gratuity rather than a purchase.

There was no tangible evidence of a deed transfer or a stock transfer which would normally accompany such a transaction. Furthermore, the Government introduced a financial affidavit signed by Defendant Evans several months after the

money transfer in which he represented that he owned 100% of Caribbean Properties.[9] Moreover, there was sufficient evidence to find that Concorde was controlled by Defendant Chapman and that the particular transfers of funds were made at his direction. Finally, the timing of these transfers was a circumstance (shortly before and after the time that Concorde received money through Bradley & Bradley from THA contracts [10]) from which the jury could infer a connection.

Quite simply, there was evidence, albeit scant, from which a jury could conclude that these payments constituted gratuities. The nature and sufficiency of this evidence is addressed in a discussion of the gratuity statute at the end of this opinion. Accordingly, Defendant Evans' and Chapman's Motions for Judgment of Acquittal on Counts 45 through 48 and 69 through 72 are **denied.**

### False Statements (Counts 120 through 125)

 Defendant Evans was charged and convicted of five counts of making false statements in violation of 18 U.S.C. § 1001(a). To establish a violation of this

---

**7.** Chapman argues that Evans, while director of MRDC, was not a public official as defined in 18 U.S.C. § 201(a). The Court is persuaded to the contrary by the charter authorizing the creation of the MRDC to perform certain low income housing functions that the THA could not. Contrary to Defendant Chapman's contention, the MRDC is more than an organization with the "mere presence of some federal assistance."

**8.** Defendant Chapman testified that he had not made a decision in whose name (i.e. which family member) or what corporation he intended the Caribbean Properties ownership to reside. Defendant Chapman, and his children, testified at trial that his businesses were in different corporations and family members' names, primarily due to health and estate planning concerns.

**9.** Chapman argues that he can neither be "held accountable" for a financial affidavit prepared by Evans nor was there evidence that he saw the affidavit. Chapman further argues that Evans disclosed the Caribbean Properties "one-half" interest as a "partial real estate interest" on the affidavit. The real issue, though, is how the jury could have interpreted it. The affidavit was one item of evidence that offers support for the conclusion that the transfer of money was not part of a purchase.

**10.** Chapman put on expert evidence regarding the legitimacy and performance of the THA contracts awarded to Chapman's companies.

statute, there are two elements: false representation and concealment of a material fact. *U.S. v. Tobon–Builes,* 706 F.2d 1092, 1096 (11th Cir.1983). Material is defined as having a "natural tendency to influence or be capable of influencing a government function." *U.S. v. Lopez,* 728 F.2d 1359, 1362 (11th Cir.1984).

### Count 120

▮ Count 120 alleges that a false statement was made in connection with an agreement between THA and a THA contractor, Thomas Mitchell (of Goshen Maintenance, a THA "resident-owned" business), regarding a $140,000 contract for providing "sod and seed" to a THA property. At the time this agreement was made, there was evidence that Thomas Mitchell was not a THA resident "in good standing" as required of resident contractors, but instead lived in a residence owned by Caribbean Properties (a corporation owned by Defendant Evans). Defendant Evans argues that there was documentary evidence (electric bills to THA for an apartment allegedly occupied by Mr. Mitchell and THA records) and witness testimony establishing that Mr. Mitchell was a THA resident at that time. Defendant argues that the Government failed to prove beyond a reasonable doubt that Mr. Mitchell was not a THA resident at the time of Evans' representation.

The Government contends, and this Court agrees, that there was sufficient evidence for the jury to conclude that Thomas Mitchell was not a THA resident and that Evans' statement that he was constituted a false statement. The Government presented evidence about Thomas Mitchell's residence. Specifically, the Government presented testimony from an acquaintance

of Mr. Mitchell who testified that Mr. Mitchell lived at the Caribbean Properties apartment and also offered a document signed by Mr. Mitchell for mail delivery at that residence. Moreover, on rebuttal, the Government called Cherie Nelson who was employed as Thomas Mitchell's probation officer and verified his residence.[11] (*See* Dkt. 245). Accordingly, it is reasonable that the jury picked between two conflicting possibilities, even without substantive evidence from Ms. Nelson, and concluded that Evans' statement about Mr. Mitchell's resident status was false. As such, the jury verdict is not contrary to the evidence and the Court denies Defendant Evans' Motion for Judgment of Acquittal on Count 120.

### Count 121

▮ Defendant Evans was charged with making a false statement when he directed a THA employee (DePaul) to sign a periodic estimate authorizing payments to Williams when in fact, no work had been performed by Williams as of that date. On this issue, Defendant Evans contends that he is entitled to an acquittal because the Government failed to provide exculpatory material from its interviews with DePaul during his appearance at the grand jury. He further contends that the pay authorization related to other unpaid work performed by Williams.

At the hearing, the Court requested that the Government provide a supplemental response on this issue. In response, the Government filed *ex parte* and *in camera,* notes of the Government's interviews with Angelo DePaul. Upon review of this filing, the Court is satisfied that these notes do not contain exculpatory material.

---

**11.** Mr. Mitchell testified that he had no recollection of speaking with Ms. Nelson. Defendant makes an extensive argument that Ms. Nelson's testimony was only admissible for impeachment of Mr. Mitchell's credibility, not as substantive evidence. It should be noted that some of this testimony was developed by Defendant's counsel on cross-examination.

Furthermore, DePaul testified he told Evans that Williams was behind in paying his subcontractors and in need of money. From the evidence before it, the jury was free to draw the rational inference that DePaul signed the estimate at the direction of Defendant Evans in order to facilitate payment to Williams. The jury was also instructed, and the evidence sufficient to find that, the false statement related to a material matter as the pay request was $51,570, not a "*de minimus*" amount. Accordingly, the Court denies Defendant Evans' Motion for Judgment of Acquittal as to Count 121.

### Count 122

In Count 122, Defendant Evans was charged and convicted of making a false statement in signing a periodic estimate authorizing payment of $35,550 for completion of roof work to Williams when in fact the roof work had not been completed. Similarly, Defendant Evans urges that the Government has unfairly withheld exculpatory material as it pertains to this count. For the same reasons and analysis set forth under its analysis of Count 121, the Court denies Defendant Evans' Motion for Judgment of Acquittal on Count 122.

### Count 123

■ Defendant Evans was charged and convicted of making a false statement when he signed a change order authorizing additional costs in the amount of $79,050.38 incurred for "sod and seed" work at a THA residence when in fact the additional costs had not been incurred. Defendant Evans argues that his signing the change order was not material to the transaction because the THA checks un-

derlying the change order had been issued two days before the date of the change order and could not have played a part in the issuance of the checks.

The Court disagrees with Defendant and finds that there was sufficient evidence for a jury to conclude that Defendant Evans knowingly made a materially false statement in signing the change order. Accordingly, the Court **denies** Defendant Evans' Motion for Judgment of Acquittal on Count 123.

### Count 124

■ The Government charged Defendant Evans with making a false statement in connection with a letter written by DePaul at the direction of Evans in which DePaul stated that Evans had no connection with a contract to repair fire damaged buildings when in fact he did.[12] Defendant Evans argues that because HUD never requested, nor was it proven that they received or relied upon this letter, it is not material. Additionally, Defendant Evans argues that he was under no duty to disclose this information to HUD.

■ The Court finds there was sufficient evidence from which a jury could ascertain that the representations were in fact false and material. Proving reliance is not necessary to prove the crime of making a false statement under 18 U.S.C. § 1001(a). *U.S. v. Johnson*, 139 F.3d 1359, 1363 (11th Cir.1998) ("government is not actually required to rely upon the alleged false statements to make them material"); *see also U.S. v. Gregg*, 179 F.3d 1312, 1315 (11th Cir.1999) (reliance is not necessary to make the false statement material in bank fraud case). Moreover, it is clear

---

12. In the letter to HUD, DePaul writes, "[i]t should be noted that this work started after Mr. Evans was granted a six month leave of absence. He had no interaction with this contract, but to authorize termination after my recommendation. The responsibility for this work, as with all construction work, rests with the Planning & Development Department." (Government Exhibit 99).

that this letter was written to HUD to influence them, in their oversight capacity, in perceiving news stories generated in Tampa related to costs expended by THA to repair the fire-damaged units. Specifically, DePaul testified about the falsity of the portion of the letter in which he denies Evans was involved in the process of awarding this contract and the selection of Williams' company. Accordingly, the Court denies Defendant Evans' Motion for Judgment of Acquittal as to Count 124.

### Count 125

 Defendant Evans is also charged with making a false statement when he signed a Public Housing Management Assessment Program Certification stating, *inter alia*, that 100% of the units inspected met housing quality standards when in fact they did not. Defendant Evans argues that in his capacity as THA's director, he signed the certification, which was completed by housing authority staff, in reliance on representations made to him by his staff. Additionally, there was evidence that THA's computer system was malfunctioning at or around this time.

The Court finds that this statement was not material and Evans' signing it was, in fact, a ministerial act. Personally certifying that several thousand units were inspected and met housing standards at a particular moment in time is a monumental task. Each year on that date, THA's executive director must make such a representation in reliance on information provided by the THA staff. THA had procedures in place providing for an annual inspection of each unit with follow-up repairs if needed. That there would not be some problem with some unit somewhere within THA is not realistic and as such, his signing the certification does not, as a matter of law, constitute a materially false statement. Accordingly, the Court **grants** Defendant Evans' Motion for Judgment of Acquittal on Count 125.

### Additional Arguments for Acquittal

Defendant Evans also raises additional arguments for errors that he maintains mandate a judgment of acquittal:

1) out of court statements made to a witness were hearsay and the admissibility of these statements limited Evans' defense;

2) the Court did not give a jury instruction regarding prior consistent statements so that the jury could properly assess the witness' credibility;

3) the prosecutor "repeatedly" reminded the jury in closing arguments that Williams had pled guilty to bribery; and,

4) the Government failed to provide exculpatory information regarding its criminal investigation of another former THA employee who assisted in preparing and presenting the certification.

The Court finds that these rulings and alleged failure to disclose by the prosecution did not constitute error and did not deprive Defendant Evans of a fair trial. Accordingly, the Court **denies** Defendant Evans' Motion for Judgment of Acquittal on these grounds.

### Defendant Evans' Motion for New Trial

 The standard of review for a motion for new trial is contained in Rule 33 of the Federal Rules of Criminal Procedure, which provides as follows: "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require. . . . [a] motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty. . . . [a] motion for new trial based on any other grounds may be made only within 7 days after the verdict of finding of guilty and within such further time as the court may affix during the 7–day period." Because Defendant's motion for new trial

was not made within seven days of the entry of the verdict and appears to rely on "newly discovered evidence," the Court analyzes the issue under the relevant law of this circuit which holds that any newly discovered evidence must possess five characteristics: "1) it was discovered following the trial; 2) the failure to discover this evidence was not due to defendant's lack of due diligence; 3) it is more than merely cumulative or impeaching evidence; 4) it is material; and 5) it is probable that, had this evidence been presented at trial, it would have produced a different result." *See e.g. Bentley v. United States,* 701 F.2d 897, 898 (11th Cir.1983).

Defendant Evans' newly discovered evidence is testimony of Belinda Singh who alleges that she was present when Evans spoke with Mr. Lawrence Peterkin about roofing work at the Caribbean Properties duplex. Mr. Peterkin was hired by Evans to clean up the yard on the weekends. In a motion verified by Ms. Singh, Defendant represents that she observed Evans "reaching into his pocket and handing what appeared to be money to the roofer" and that Evans told her that he had to go to the Caribbean Properties duplex to pay the roofer. Defendant Evans proffers this witness' testimony to bolster his credibility and establish that Mr. Evans paid for the roofing services rather than accepting them as a bribe or gratuity. Defendant argues that because the Government attempted to impeach Evans and Mr. Peterkin,[13] Ms. Singh's testimony, as an "independent unbiased witness whose credibility cannot be challenged," would result in Evans' acquittal by the jury. Defendant also argues that the evidence is not "merely cumulative" and that this information was not known to Defendant at or prior to the time of trial.

The Court finds that Defendant Evans has not established that the newly discovered evidence conforms to the necessary characteristics. Even if the Court were to find that Defendant's failure to discover this post-trial evidence was not due to Defendant's lack of diligence, it does not appear to be more than cumulative impeachment evidence. Moreover, the Court can not say that a different result would probably occur if the evidence were presented at trial. Defendant therefore can not sustain his burden for a new trial and the Court hereby **denies** Defendant's Motion for New Trial.

### The Gratuity Statute

The gratuity statute, charged against all three Defendants in this case, is a cause of great concern to this Court. The potential breadth of the statute constitutes considerable danger to both public officials and unwitting citizens who deal with those officials.

When read broadly, as the Government urges, all the Government must show to send a case to the jury is that something of value was given or transferred to a public official by one who had a business transaction with that official's agency either in the past or future. The Government argues that once this low threshold is met, the jury is free to find that a criminal violation occurred, even with no evidence of wrongdoing, inflated contract prices or other suspect dealings. The dangers of this interpretation are obvious: it would ensnare many individuals who had made innocent gifts or loans or had legitimate business transactions with officials. That is, under the Government's interpretation, once evidence of a transfer has been adduced, the defendant must prove the legitimacy of the

---

**13.** The Government questioned Mr. Peterkin about borrowing money from Evans. Specifically he asked Mr. Peterkin where he got the money to purchase a cashier's check to repay Evans $3,000 that he allegedly borrowed from Evans in May 1995.

transaction or suffer a possible guilty verdict. The presumption of innocence appears to have disappeared.

■ The crime of "receiving an illegal gratuity by a public official" in violation of 18 U.S.C. § 201(c)(1)(B) requires that the defendant, a public official:

1) demanded or sought, received or accepted, agreed to receive or accept, either personally or for another person or entity, something of value; and

2) demanded, received and agreed to receive a thing of value not authorized by law; and,

3) did so for or because of an official act to be performed by the defendant.

The quantum of proof necessary to establish the third element—that the thing of value was transferred "for or because of an official act to be performed by the defendant" is the source of the problem. This issue has been addressed recently by the Supreme Court in *Sun–Diamond,* a case involving the former Secretary of Agriculture's receipt of gifts from Tyson Foods. The Supreme Court held that there must be some sort of link or nexus between the official act and the payment, but it is unclear how far the Government must go towards demonstrating this link to support a conviction.

The instant case is particularly instructive. Evans' co-Defendants received different results in this case from only slight differences in proof. Watson, like Chapman, was charged with wire fraud, conspiracy, bribery, gratuity, and money laundering. Watson received funds from THA contracts from November, 1993, through March, 1995. At sporadic times over a two year period beginning in May, 1995, money in amounts less than $25,000 each was transferred from Watson or his companies to Evans. The Government offered no explanation of the transfers contending that it was not required to do so. The

Court found no circumstances from which a jury could find that the transfers were gratuities rather than legitimate business transactions. Therefore, Watson's Rule 29 motion for judgment of acquittal was granted.

Defendant Chapman's case concerned payments totaling $125,000 made by Chapman on mortgages owed by Evans' company, Carribean Properties, Inc., and Chapman's pledge of a $25,000 certificate of deposit as collateral to assist Evans in obtaining a bank loan. The slight differences in circumstances surrounding Chapman's acts were sufficient for the case to go to the jury. The jury found Chapman guilty of giving unlawful gratuities.

One difference between the case against Watson and the case against Chapman is the larger amount of Chapman's transfer. Another is the timing. Chapman's acts occurred very near the time his company received the initial contracts from THA and later when it first received its share of the profits. The dates of the initial contracts with THA are as follows: College Hill Cabinets from May 12, 1995 through October 11, 1995; North Blvd. Joint Ventures from October 6, 1995 through February 27, 1998; and Delaney Creek on October 16, 1995. The $25,000 certificate of deposit was posted as collateral for Evan's loan in December, 1995.

In July, 1996, Evans became the executive director of MRDC, the non-profit corporation created by THA to assist in providing low income housing opportunities. Concorde, a company controlled by Chapman that also had contracts with MRDC, received its first distribution of profits from the THA jobs in March, 1997 ($800,-000), and April, 1997 ($300,000). These profits were placed in Concorde's Raymond James account. From its contracts with MRDC, Concorde first received its profits on November 25, 1996. By Febru-

ary 21, 1997, it had received over $300,000 and purchased a $250,000 certificate of deposit. A month later, this $250,000 was transferred to the same Raymond James account which held the profits from the THA contracts. On May 1, 1997, $125,000 was written out of this account and applied to Evans' Caribbean Properties mortgages.

Another significant difference between Watson and Chapman's circumstances is that Chapman's payments for the Caribbean Properties mortgages were the type (payments on another's real estate notes and mortgages) that would normally produce record title evidence (substitute recorded mortgage or deed), but there was none in the public records. And finally, the Government produced a financial affidavit given by Evans to a bank from which the jury could have concluded that Evans still claimed 100% ownership of Caribbean Properties several months after the payments by Chapman.

In his defense, Chapman claimed the payments were to purchase a 50% interest in Carribean Properties, but he delayed taking a deed until he could decide in whose name to title it (he was considering taking title in the name of one of his children or their companies). Chapman submitted unrebutted evidence that all of his contracts were for fair value. When other bids were received, Chapman's was the lowest bid. One contract was for less money than a previous contractor had contracted to perform the same work, but who had abandoned the project because the price was too low. Further, Chapman established through unrebutted evidence that his work was of good quality.

The line between Defendant Watson and Defendant Chapman's circumstances is thin. This Court has struggled with the sufficiency of the evidence in Chapman's case, but finally has concluded that the circumstances, however slim, are sufficient to support the jury's verdict; that is, Chapman has not established that "no reasonable jury could have found him guilty beyond a reasonable doubt on the evidence presented." *See U.S. v. Ruiz*, 253 F.3d 634, 639 (11th Cir.2001).

The potential for unfairness in this statute cries for remedy. This Court strongly urges Congress to rewrite the gratuity statute to provide a well-defined harbor for those dealing with public officials. It would be easier for courts and individuals to discern criminal liability if Congress were to provide a bright line test for what constitutes a violation of the statute and clearly define the forbidden territory in dealing with public officials so as to avoid criminal prosecutions for innocent acts.

The Court, in this case, cannot provide such a remedy for Defendants Evans and Chapman. The proscribed remedy is a legislative, not judicial, function.

Accordingly, it is hereby **ORDERED and ADJUDGED** that

1. Defendant Chapman's motions for judgment of acquittal are **DENIED** for the reasons set forth herein.

2. Defendant Evans' motions for judgment of acquittal are **DENIED** in part and **GRANTED** in part as set forth herein.

3. Defendant Evans' Motion for New Trial and Motion to Compel the Government's Production of Grand Jury Minutes and Transcripts of Interviews with Bill Williams are **DENIED.**