[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2011
JOHN LEY
CLERK

No. 09-15622
Non-Argument Calendar
_____

D. C. Docket No. 08-00158-CR-FTM-29-DNF


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC MARION, SR.,
a.k.a. T,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 22, 2011)

Before EDMONDSON, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Isaac Marion, Sr., appeals his convictions for conspiracy to commit money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), (h), and making a false statement to a government agent, 18 U.S.C. § 1001(a)(2). No reversible error has been shown; we affirm.

Marion earlier had been arrested on drug trafficking charges. In connection with these charges, the government sought forfeiture of certain real property, including a property located at 881 Jarmilla Lane. Marion's daughter, Tiera Marion ("Tiera"), lived on this property; and Marion had paid for the construction of a house on the property with money from his drug dealings. In the months after Marion's arrest on drug charges, Tiera took out two loans on the Jarmilla Lane property. Investigating agents eventually discovered these loans, questioned Marion about them, and instituted the instant charges.

On appeal, Marion argues that the district court erred by not granting his motion for judgment of acquittal because insufficient evidence existed to sustain his convictions. When a motion for judgment of acquittal raises a challenge to the sufficiency of the evidence, "we review the sufficiency of the evidence de novo, drawing all reasonable inferences in the government's favor." United States v. Evans, 473 F.3d 1115, 1118 (11th Cir. 2006). To affirm the denial, we "need

2

determine only that a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." Id.

Marion was convicted under the "concealment" provision of the money-laundering statute. See United States v. Majors, 196 F.3d 1206, 1211-12 (11th Cir. 1999) (explaining that this part of the statute was designed to punish defendants who "take the additional step of attempting to legitimize their proceeds so that observers think their money is derived from legal enterprises"). And to convict Marion under this provision, the government had to show that

> (1) [Marion] conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of a statutorily specified unlawful activity; (3) [he] knew the proceeds were from some form of illegal activity; and (4) [he] knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

United States v. Miles, 290 F.3d 1341, 1354-55 (11th Cir. 2002); see also 18 U.S.C. § 1956(h) (explaining that a person who conspires to commit any offense in section 1956 is subject to the same penalties for the offense the commission of which was the object of the conspiracy).

We are unpersuaded by Marion's argument that, under United States v. Santos, 128 S.Ct. 2020 (2008), the loan proceeds must constitute profits to satisfy the "proceeds" requirement of the money-laundering statute. In Santos, a four-justice plurality concluded that, in the context of a defendant operating an illegal

3

lottery, "proceeds" meant "profits." Id. at 2022-25. But, in recognizing the limited precedential value of Santos, we explained that the narrow ruling in Santos, at most, meant "that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956." United States v. Jennings, 599 F.3d 1241, 1252 (11th Cir. 2010). Accordingly, in contexts other than an unlicensed gambling operation, we have continued to apply the previous definition of "proceeds" to include "receipts as well as profits." Id.

That Marion initially received the funds he invested in the Jarmilla Lane property from his drug-dealing operation is uncontested. Therefore, the plurality opinion in Santos applying to unlicensed gambling operations is inapplicable; and sufficient evidence existed for the jury to find that the loan transaction involved proceeds from illegal activity.

Marion also argues that the loan transactions were not an attempt to conceal the nature of the source of the funds. In determining whether a transaction was meant to conceal, the crux of the issue is whether "the money is better concealed or concealable after the transaction than before." See United States v. Blankenship, 382 F.3d 1110, 1130 (11th Cir. 2004). Factors to consider include, among others, (1) statements by defendant probative of intent to conceal; (2) highly irregular features of the transaction; (3) using third parties to conceal the real owner; and (4)

4

a series of unusual financial moves cumulating in the transaction.  Id.

Marion characterizes Tiera's loans as simple, straightforward bank transaction.  But this characterization ignores the breadth of the transactions.  The entire transaction consisted of Marion giving his drug proceeds to Tiera, a third-party, having Tiera invest the funds in a house that was titled in her name, having her take a loan out of the property's equity with no intent to repay that loan, and then reinvesting the proceeds of that loan in other property in hopes of reacquiring the initial investment before forfeiture.  In addition, Marion made many statements probative of his intent to conceal.  In phone conversations with Tiera, he explained that the government would seize the Jarmilla Lane property and instructed Tiera to "max out" on the house and not put the proceeds of the loans back in the house.  On these facts, and drawing all inferences in the government's favor, the government demonstrated sufficiently that the loans Tiera took out on the Jarmilla Lane property were designed to conceal or disguise the nature, location, source, ownership, or control of Marion's drug-dealing proceeds.

On his false statement conviction, Marion argues that the statement that he knew nothing about Tiera's loans was immaterial.[1]  "To satisfy the element of

---

[1]To convict Marion of making a false statement to a government agency, the government had to show that (1) he made a false statement; (2) the statement was material; (3) he acted with specific intent to mislead; and (4) the matter was within the purview of a federal government agency.  United States v. McCarrick, 294 F.3d

materiality, it is enough if the statements had a natural tendency to influence, or be capable of affecting or influencing a government function." United States v. Calhoon, 97 F.3d 518, 530 (11th Cir. 1996) (quotations omitted).

Marion argues that, because the government already knew about the loans, his statement denying knowledge of the loans had no capacity to affect the government's decisions. But we have explained that "[a]ctual knowledge by the government is not a defense to the 'materiality' requirement of false statement prosecutions." United States v. Johnson, 139 F.3d 1359, 1364 (11th Cir. 1998). And actual impairment of the government agency is not necessary; instead, false statements "must simply have the capacity to impair or pervert the functioning of a government agency." See Calhoon, 97 F.3d at 530. Marion's statement required the government to pursue other avenues to confirm Tiera's acts; and thus, the statement had the capacity to impair the investigation. See United States v. Lopez, 728 F.2d 1359, 1362-63 (11th Cir. 1984) (concluding that false statements were material in part because they inconvenienced a government agency).

Marion also challenges the district court's admission of Tiera's savings account records. He contends that this evidence was irrelevant to the charges and served only to mislead and confuse the jury. We review a district court's

1286, 1290 (11th Cir. 2002).

evidentiary rulings for an abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403.

We conclude that Tiera's savings account records -- which established that Tiera made no payments on the second loan she obtained on the Jarmilla Lane property -- were relevant to Marion's conspiracy charge. The evidence tended to show that Tiera had no intent of repaying the loan. And this proposition tended to make it more likely that Tiera's sole intent in incurring the loan was to obtain the maximum amount of value out of the property before the Marions forfeited the property to the government. So, this proposition was of consequence to the determination of Marion's conspiracy to commit money laundering conviction: if Tiera had intended to repay the loan, the Marions would have received no benefit from the transaction; and these proceeds from Marion's illegal drug activity would have been forfeited to the government.

7

Given the probative value of the evidence to the charged offense, we reject Marion's contention that the evidence was subject to exclusion under Rule 403 as confusing or misleading.  See United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992) (explaining that Rule 403 is an "extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence").

AFFIRMED.