[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2002
THOMAS K. KAHN
CLERK

-----------------------
No. 01-11214
-----------------------

D.C. Docket No. 88-00488CR-RLV-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD EDWARD MILES,
a.k.a. "Gene",
a.k.a. Jim Gene Tyler,

Defendant-Appellant.

--------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
--------------------------------------------------------

(May 10, 2002)

Before BIRCH and DUBINA, Circuit Judges, and KATZ*, District Judge.

_____

*Honorable Marvin Katz, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

PER CURIAM:

Donald Edward Miles appeals his jury convictions and sentences, including life imprisonment, for one count of conspiracy to manufacture, distribute, and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841 (a)(1), 846, and 18 U.S.C. § 2; two counts of interstate travel or transportation in aid of racketeering enterprises, in violation of 18 U.S.C. §§ 2 and 1952(a)(3); three counts of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of interstate travel or transportation in aid of racketeering enterprises, in violation of 18 U.S.C § 1952 (a)(1); one count of possession of marijuana, in violation of 21 § U.S.C. 841(a)(1); one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 2, 921(3), 922(g)(1), and 924(e); one count of conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; three counts of money laundering in violation of 18 U.S.C. §§ 2 and 1956; and one count of investment of illegal drug profits, in violation of 21 U.S.C. § 854, and 18 U.S.C. § 2. For the following reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.     **Background**

The appellant was arrested in 1988 for his alleged participation in an

elaborate methamphetamine conspiracy. On October 21, 1988,[1] a grand jury

indicted Miles for drug violations, money laundering, and possession of a weapon

by a convicted felon. On November 22, 1988, the district court in open court

declared the case to be "complex litigation" and indicated that it would sever the

trials of the various defendants. On April 26, 1989, the district court entered an

order setting five separate trial dates with Miles' trial to be the first. At trial,

Miles' methamphetamine supplier, Richard Madlener, testified as a witness for the

government. After four weeks of trial in May and June of 1989, the trial court

granted Miles' motion for judgment of acquittal on certain counts as well as Miles'

motion for a mistrial on all remaining counts. Although detained pending trial,

Miles was released on bond.

Following the mistrial, the grand jury returned a second superseding

indictment against Miles on October 24, 1989. Initially, the court entered an order

setting the trial dates for Miles and certain co-defendants beginning March 5, 1990.

Miles filed no objection to the scheduling order, but on November 13, 1989, he

filed a motion to dismiss two counts of the second superseding indictment alleging

a double jeopardy violation. On February 14, 1990, while his double jeopardy

---

[1] Because defendant claims a violation of the Speedy Trial Act, 18 U.S.C. §3161, the dates of the proceedings are critical to evaluating defendant's appeal.

motion was pending, Miles consented to the severance of his case from that of his

co-conspirators. Miles' consent to severance read in its entirety:

> The Defendant, Donald L. Miles, consents to the sever-
> ance of his case from that of his co-defendants in the
> above-styled case and to the consolidation of his cases
> for trial.
> Defendant acknowledges that this will result in a delay of
> his trial and waives his rights under the Speedy Trial Act.

On March 8, 1990, the government moved for a continuance due to the absence of

witness Richard Madlener, who had fled the country. The district court granted the

continuance until May 21, 1990, and the government again moved for a continuance

due to the missing witness on May 7, 1990. On May 21, 1990, the district court

found that Madlener was an unavailable, essential witness and continued the trial

for 90 days, until August 19, 1990. The district court ordered that if Madlener

remained unavailable, the counts charging the methamphetamine conspiracy in the

indictment would stand dismissed without prejudice. Even though the government

attempted to locate and retrieve Madlener, he remained unavailable. In a report to

the district court dated August 2, 1990, the government informed the district court

of its intention to admit Madlener's former testimony pursuant to Fed. R. Evid.

804(b)(1). The district court did not dismiss the methamphetamine conspiracy

charges against Miles, and on March 26, 1991, the grand jury issued a third

superseding indictment against Miles.

On January 17, 1992, Miles filed a motion to dismiss the indictment alleging a Speedy Trial Act violation. Without a hearing or findings, the district court denied the motion on October 23, 1992. The district court also denied Miles' double jeopardy motion on October 6, 1992. Miles filed an interlocutory appeal on the double jeopardy motion, and this court affirmed the lower court's decision on March 28, 1994. Defendant's trial began on July 11, 1994 – 576 days after he was initially indicted. On July 21, 1994, Miles failed to appear following the denial of his motion for judgment of acquittal. On July 25, 1994, the jury convicted the defendant on nine out of ten counts. After Miles was located and arrested in June of 2000, the district court sentenced Miles to life imprisonment for possession of a firearm under 18 U.S.C. §§ 922(g) and 924(e) and also imposed concurrent and consecutive sentences on the other counts.

Miles raises seven issues on appeal: first, that the government failed to prove that Miles committed three prior violent felonies, pursuant to 18 U.S.C. § 924(e); second, that the district court erred in sentencing the defendant under the Armed Career Criminal Act, 18 U.S.C. § 924(e), by violating the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000); third, that the district court erred in denying Miles' motion to dismiss based upon a

5

violation of the Speedy Trial Act, 18 U.S.C. §3161; fourth, that the district court erred in admitting hearsay evidence under Fed. R. Evid. 801(d)(2)(E); fifth, that the district court erred in admitting prior testimony of a witness under Fed. R. Evid. 804(b)(1); sixth, that the district court erred in denying Miles' request to instruct the jury on the law of reliance on the advice of counsel as a defense; and seventh, that the evidence was insufficient to authorize the jury to support a conviction of money laundering.

## II.  Discussion

### A.  Sentencing Issues

Miles argues that the district court incorrectly found that he had three prior "violent felony" convictions and thus improperly enhanced his sentence under 18 U.S.C. § 924(e).  In enhancing Miles' sentence, the district court relied on a prior conviction for possession of an unregistered firearm in violation of 26 U.S.C. § 5841 and two prior burglary convictions under state law.  Miles argues that this court in *United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994), held that possession of a firearm by a felon is not a violent felony within the meaning of section 924(e)(2)(B); therefore, his firearm conviction does not qualify as a violent felony.  Miles also argues that the district court erred in treating his two 1965 burglary convictions as predicate offenses because the court neither ascertained the

6

actual burglary statute under which he was charged nor determined the statutory elements of burglary under Georgia law as required by *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160, 109 L. Ed. 2d 607 (1990). According to Miles, Georgia law did not define burglary as an unlawful entry into a building or other structure at the time of his conviction. *See Bennett v. State*, 222 S.E.2d 207 (Ga. Ct. App. 1975) (describing the unlawful entry into an automobile as a "burglary"). Furthermore, Miles contends that the district court did not find that his conviction for two counts of burglary in 1965 were for felonies "committed on occasions different from one another" as required under section 924(e)(1).

We review the district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts *de novo*. *United States v. Richardson*, 230 F.3d 1297, 1298 (11th Cir. 2000), *cert. denied*, 121 S. Ct. 1626 (2001). Whether two crimes constitute a single criminal episode or two separate felonies for purposes of section 924(e) is an issue of law, which we review *de novo*. *Id.* Under the Sentencing Guidelines, "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal," U.S.S.G. § 4B1.4(a), requiring an increase in the criminal history category and offense level. U.S.S.G. § 4B1.4(b) and (c). The government recommends, and

7

Miles agrees,[2] that we remand the case to the district court to make factual findings necessary to complete the record on the issue of Miles' previous convictions. We agree.

Section 924(e) provides that any person who violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, shall be imprisoned not less than 15 years. 18 U.S.C. § 924(e)(1). The statute defines violent felony as

> any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person or another; or (ii) is burglary . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.C. § 924(e)(2)(B). Once the government has shown that the defendant has three prior violent felony convictions, the burden then shifts to the defendant to establish that the convictions were unconstitutional. *United Stats v. Ruo*, 943 F.2d 1274, 1276 (11th Cir. 1991). The sentencing court must employ "a formal categorical approach, looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions" in determining whether the enhancement is proper. *Taylor*, 495 U.S. at 600, 110 S.Ct. at 2159.

---

[2] Miles initially argued that it would be improper for us to remand his case for further fact finding on the sentencing issues. However, in a letter submitted following oral argument, counsel for the defendant urged this court to remand the sentencing issue to the district court.

While the Supreme Court in *Taylor v. United States* cautioned against going beyond the mere fact of a conviction to determine whether the Armed Career Criminal Act applies, the Court acknowledged that a sentencing judge may need to examine a burglary conviction more closely. *Id.* Because the statutory definition of burglary differs in many states, a burglary conviction serves as a predicate for enhanced sentencing under section 924(e) only if the conviction is for a crime involving the elements of "generic" burglary.[3] *Id.* at 599. According to the Court, a sentencing judge may examine the charging document and the jury instructions in order to determine whether a defendant was convicted of "generic" burglary. *Id.* Furthermore, this court has found that a sentencing judge may examine police reports and arrest records to clarify the number of offenses when determining whether two burglary convictions are temporally distinct and qualify as separate offenses. *Richardson*, 230 F.3d at 1299-1300.

At sentencing, the district court found that Miles had two prior convictions for burglary and a prior conviction for weapons possession, but did not articulate on the record the basis for finding that the two burglary convictions were committed on separate occasions and that each was for "generic" burglary as defined by the

---

[3] The Supreme Court in *Taylor* defined "generic" burglary as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599.

Supreme Court. Therefore, the district court did not make sufficient findings of fact on the record to allow us to review its decision, and we remand this case to the district court. The district court is instructed to find whether Miles committed the requisite number of prior violent felonies under 18 U.S.C. § 924(e) for sentence enhancement and to consider the facts underlying the prior convictions in determining whether the 1965 convictions arose from a single episode.[4]

Next, Miles argues that his life sentence under section 924(e) violated the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000), because Count Ten of the indictment failed to allege, and the jury was not required to find, that he had three prior violent felony convictions. We

---

[4] In light of our decision to remand, it is premature to decide whether a conviction for possession of an unregistered weapon in violation of 26 U.S.C. § 5861(d) qualifies as a violent felony for section 924(e) sentencing enhancement. In this circuit, we have not addressed whether such a conviction is a violent felony. This court in *United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994) found that possession of a weapon in violation of 18 U.S.C. § 922(g) was not a violent felony as defined under 18 U.S.C. §924(e). However, in *United States v. Hall*, 77 F.3d 398, 401 (11th Cir. 1996), we held that a conviction for concealing a weapon was conduct posing a serious potential risk of physical injury. As we reasoned in *Hall*, "[a] substantial difference – in terms of the likelihood of immediate violence flowing from the crime – exists between the offense of carrying a concealed weapon and the offense of possessing a weapon as a convicted felon." *Id.* at 402 n.4.

Other courts have addressed whether a section 5861(d) conviction qualifies as a crime of violence under the federal sentencing guidelines, *see United States v. Dwyer*, 245 F.3d 1168, 1172 (10th Cir. 2001) (finding that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) qualified as a crime of violence under U.S.S.G. § 4B1.2(a) for enhancement under U.S.S.G. § 2K2.1(a)), and the Armed Career Criminal Act, *see United States v. Fortes*, 141 F.3d 1, 8 (1st Cir. 1991) (finding that a previous conviction for possessing a sawed off shotgun in violation of 26 U.S.C. § 5861(d) qualified as a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)). However, we feel it is unnecessary to address the issue at this time.

10

reject Miles' *Apprendi* claim.

Because Miles raised the argument under *Apprendi* at sentencing, he made a timely constitutional objection that we review *de novo*. *United States v. Candelairo*, 240 F.3d 1300, 1303-06 (11th Cir. 2000), *cert. denied*, 121 S.Ct. 2535 (2001). The Supreme Court established in *Almendarez-Torres v. United States* that a defendant's prior conviction is merely a sentencing factor that does not have to be submitted to the jury and proved beyond a reasonable doubt. 523 U.S. 224, 247, 118 S.Ct. 1219, 1233, 140 L.Ed.2d 350 (1998). The Court subsequently held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-63. The Court also stated that "we need not revisit [*Almendarez-Torres*] for purposes of our decision today to treat the case as a narrow exception to the general rule . . . ." *Id*. After the Supreme Court decided *Apprendi*, we considered its effect on *Almendarez-Torres* and held that "*Almendarez-Torres* remains the law until the Supreme Court determines that *Almendarez-Torres* is not controlling precedent." *United States v. Guadamuz-Solis*, 232 F.3d 1363, 1363 (11th Cir. 2000).

Thus, we find that the district court did not violate *Apprendi* in considering Miles' prior convictions.

### B.    Miles' Statutory Right to a Speedy Trial

Miles appeals the district court's denial of his motion to dismiss based on a violation of the Speedy Trial Act.  18 U.S.C. § 3161.  This court reviews a claim under the Speedy Trial Act (STA) *de novo*.  *United States v. Twitty*, 107 F.3d 1482, 1488 (11th Cir. 1997).   We review the district court's factual determinations on excludable time for clear error. *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997).

The grand jury first indicted Miles on October 21, 1988, and the defendant's first trial began on May 30, 1989.[5]  The district court declared a mistrial on June 28, 1989, and the government filed a superseding indictment against Miles on October 24, 1989.  On November 7, 1989, the district court issued a scheduling order setting trial dates for all defendants beginning March 5, 1990, and the defendant filed no objection to this order.  In February, 1990, Miles consented to the severance of his case from those of his co-defendants and affirmatively waived his speedy trial rights under the STA.  In March, 1990, the government moved for a continuance based on its inability to locate witness Richard Madlener.  The district court granted the government's motion for a continuance and, in May, 1990, the district court

---

[5] The appellant waived his right to object to any delay preceding the commencement of his first trial because he failed to move for dismissal prior to the start of that trial. *See* 18 U.S.C. § 3162(a)(2); *see also United States v. Beard*, 41 F.3d 1486, 1488 (11th Cir. 1995).  However, this waiver does not continue beyond the trial court's declaration of a mistrial. *Id.* at 1489.

granted another motion for a continuance due to Madlener's unavailability. In granting the continuance, the district court found Madlener to be an unavailable and essential witness and continued the trial until August 19, 1990. In early August, 1990, the government informed the court that Madlener remained unavailable. On January 17, 1992, the defendant filed a motion to dismiss arguing that the delay violated his statutory speedy trial rights.[6] The government argues, *inter alia*, that the defendant's waiver and the unavailability of the essential witness tolled the speedy trial clock. Assuming, *arguendo*, that the defendant merely waived his STA rights until his first scheduled trial date following the mistrial,[7] we find that the delay in bringing Miles to trial is excludable under 18 U.S.C. §3161(h)(3)(A) due to the unavailability of an essential witness. Thus, we find that no STA violation occurred.

The STA provides that the trial of any indicted defendant must commence

---

[6] In his motion to dismiss, Miles argued that the unexcludable time under the STA began on May 22, 1991 – the day after the judge granted the government's second motion for a continuance. Therefore, we will address only the delay that occurred after May 22, 1991.

[7] The government argues that Miles' waiver in February, 1990, operated as a complete waiver of his statutory speedy trial rights until he filed his motion to dismiss under the STA in January, 1992. We note that nothing in the record suggests that the waiver was conditional or limited. However, when determining the scope of a speedy trial waiver it is necessary to indulge every reasonable presumption against waiver. *United States v. DeLongchamps,* 679 F.2d 217, 219 (11th Cir. 1982) (citing *Barker v. Wingo*, 407 U.S. 514, 525, 92 S. Ct. 2182, 33 L. Ed.2d 101 (1972)). Because we find that the delay in Miles' trial is excludable under the unavailable, essential witness exception to the Speedy Trial Act, we need not address whether the defendant waived his speedy trial act rights indefinitely.

13

within seventy days from the filing date of the indictment or the date on which the defendant first appears before the court in which that case is pending, whichever is later. 18 U.S.C. § 3161(c)(1). If the defendant is not tried within the seventy-day time limit, the court must dismiss the indictment upon motion by the defendant. 18 U.S.C. § 3161(a)(2). Under section 3161(e) of the Act, a defendant's retrial must commence seventy days following the court's declaration of a mistrial.

It is clear that more than 70 days passed from the district court's declaration of a mistrial and Miles' retrial in 1994. However, the Act also excludes certain delays in computing the seventy-day time limit. 18 U.S.C. § 3161(h). In deciding whether a defendant's speedy trial clock has expired, the district court excludes any period of delay resulting from a continuance granted by the judge "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The district court also excludes any delay resulting from an interlocutory appeal, *id.* at § 3161(h)(1)(E), any delay resulting from the unavailability of an essential witness, *id.* at § 3161(h)(3)(A), any delay resulting from pretrial motions, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," *id.* at § 3161(h)(1)(F), and "any delay reasonably attributable to any period, not to exceed

14

thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* at § 3161(h)(1)(J). "[E]ach period of excludable delay is automatically excluded from the Speedy Trial clock regardless of whether the excludable event caused any actual delay of trial." *United States v. Davenport*, 935 F.2d 1223, 1233-34 (11th Cir. 1991).

Under the Act, a witness is considered unavailable if "his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. §3161(h)(3)(B). Although the act does not define "essential witness," the Senate Judiciary Committee report accompanying the bill that became the Speedy Trial Act explained that an "essential witness" is a "witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice." S. Rep. No. 93-1021, at 37 (1984), *reprinted in* 1984 U.S.C.C.A.N. 7401. As the Eighth Circuit explained,

> [w]here a witness is unquestionably important, and the government has a good faith belief that it will use that witness's testimony at trial, that witness may be deemed "essential" for purposes of the Speedy Trial Act. If, however, the witness's anticipated testimony will be merely cumulative, or substantially irrelevant, that witness should be deemed non-essential.

*United States v. Eagle Hawk*, 815 F.2d 1213, 1218 (8th Cir. 1987). Furthermore, the

Act does not require the government to decide conclusively before trial whether it will actually use a particular witness' testimony. *Id.*

The district court determined that Madlener was an unavailable and essential witness as defined by the Speedy Trial Act. Even though the government notified the court of its intention to admit Madlener's prior testimony if necessary, Madlener's status as an essential witness remained unchanged. A witness may be deemed essential for the purposes of the Act, even though the government could obtain a conviction without his testimony. *See United States v. Roy Hamilton*, 46 F.3d 271, 277 (3d Cir. 1995); *United States v. Tedesco,* 726 F.2d 1216, 1222 (7th Cir. 1984); *United States v. Marrero*, 705 F.2d 652, 656-57 (2d Cir. 1983). While the government eventually obtained a conviction without Madlener's live testimony, that fact does not alter the district court's finding that Madlener was an unavailable, essential witness for the purposes of the STA. Furthermore, it is immaterial whether Madlener's unavailability actually caused the delay in trial. *Davenport*, 935 F.2d at 1233-34. Because we find that the delay in the defendant's trial is excludable under 18 U.S.C. §3161(h)(3)(A), we affirm the lower court's ruling denying Miles' motion to dismiss for a Speedy Trial Act violation.

## C.    Evidentiary Rulings

Determinations of the admissibility of evidence are in the discretion of the

trial judge and will not be reversed by an appellate court unless it finds an abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11ᵗʰ Cir. 1983).

### 1.    Rule 801(d)(2)(E) Testimony

Miles appeals the district court's admission into evidence of testimony by James Robert Blackburn, a government witness.  At trial, Blackburn testified that he knew Woodrow Larry Beard, and that he and Beard ran into each other in a bar in Atlanta in 1984.  According to Blackburn, Beard said he could sell the cocaine which Blackburn was trying to sell him, and also said he could get "speed."  Blackburn testified that Beard admitted Miles was the source of his methamphetamine and that Beard could provide Blackburn with all the methamphetamine Blackburn wanted.  The defendant objected to Blackburn's testimony as hearsay and now argues that the district court erred in admitting this testimony because the statements were not made in the course of, or in furtherance of, the conspiracy.  Fed. R. Evid. 801(d)(2)(E).

Under Rule 801(d)(2)(E), statements of co-conspirators made during the course and in furtherance of the conspiracy are not hearsay.[8]  In order for evidence

---

[8] Fed. R. Evid. 801(d)(2)(E) provides:
> A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.  The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation

to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) that the statement was made during the course and in furtherance of the conspiracy. *See United States v. Dickerson*, 248 F.3d 1036, 1049 (11th Cir. 2001) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).  When determining whether the above elements have been satisfied, the district court may rely on information provided by the co-conspirator's proffered statement as well as independent external evidence. *See Bourjaily*, 483 U.S. at 180-81; *United States v. Byrom*, 910 F.2d 725, 735-36 (11th Cir. 1990).  This circuit applies "a liberal standard in determining whether a statement is made in furtherance of a conspiracy."  *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988).  The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way.  *United States v. Caraza*, 843 F.2d 432, 436 (11th Cir. 1988) (per curiam).   Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy.  *City of Tuscaloosa v. Harcros*

---

therein of the declarant and the party against whom the statement is offered under subdivision (E).

*Chemicals, Inc.*, 158 F.3d 548, 558-59 (11th Cir. 1999). A district court's determination that a statement was made in furtherance of a conspiracy is a finding of fact subject to a clearly erroneous standard of review. *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir. 1989).

The evidence at trial established that in April, 1984, Madlener began manufacturing methamphetamine in Washington and shipping it to George Fee Howell in California. Howell then shipped the drugs to Miles at the Pine Hills Golf Course, Beard's place of employment. There was sufficient evidence in the record to support a finding that a conspiracy existed between Miles and Beard at the time Beard made the statement to Blackburn. Furthermore, Beard's statements to Blackburn suggest that Beard was soliciting Blackburn to participate in the conspiracy.[9] *See Harcros Chemicals, Inc.*, 158 F.3d at 559 (citing *United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir. 1984)). While the trial court did not make explicit findings, the court admitted the testimony pursuant to Fed. R.

---

[9] While the Fourth Circuit has reversed a conviction where a trial court allowed a witness to testify that another person identified the defendant as his supplier, *United States v. Urbanik*, 801 F.2d 692 (4th Cir. 1986), we find that case distinguishable from the one at bar. In *Urbanik*, a marijuana distributor identified Urbanik as his supplier during a casual conversation while weight-lifting with another man. The court found that the "statement [could] fairly be treated only as the sort of idle conversation which, though it touches upon, does not 'further,' a conspiracy . . . ." *Id.* at 698. However, Beard's statement was not merely "idle conversation." Beard identified the source of his drugs and explained that Miles could provide Blackburn with methamphetamine. As discussed above, a conspirator's attempts to solicit membership in a conspiracy are in furtherance of a conspiracy. *See Harcros Chemicals, Inc.*, 158 F.3d at 559 (11th Cir. 1999).

19

Evid. 801(d)(2)(E) and implicitly found that Beard's statement was made in the course of, and in furtherance of, a conspiracy. *See United States v. Dynalectric Co.*, 859 F.2d 1559, 1582 (11th Cir. 1988) (upholding the admission of testimony under Fed. R. Evid. 801(d)(2)(E) even though the district court did not make explicit findings). Therefore, the district court did not err in admitting Blackburn's testimony.

### 2.    Rule 804(b)(1) Testimony

Miles appeals the district court's admission of former testimony under Fed. R. Evid. 804(b)(1). At Miles' first trial, Gordon Montcalm testified for the government. At the first trial, Montcalm's testimony focused on Miles' relationship with a methamphetamine laboratory in Atlanta. The government attempted to show that Miles was involved in a separate methamphetamine conspiracy in Atlanta with Montcalm and other co-conspirators. In cross-examining Montcalm, Miles' attorneys focused on Miles' relationship with the alleged lab and extensively probed Montcalm's motive to lie. The district court granted Miles' motion for judgment of acquittal on these charges.

At Miles' second trial, Montcalm was unavailable.[10] During the retrial, the government offered Montcalm's prior testimony to prove that Miles conspired to

---

[10] Miles' attorneys stipulated to Montcalm's unavailability.

distribute methamphetamine with the manufacturers out west, with Montcalm and Larry Jones, and with two additional drug dealers named Ricky White and Dennis White. The district court admitted the testimony over the defendant's hearsay objection as former testimony under Fed. R. Evid. 804(b)(1). Miles argues that, at his retrial, the government offered Montcalm's testimony to prove a broader and more elaborate conspiracy than at his first trial; therefore, the defendant had a different theory of cross-examination and dissimilar motive. The defendant claims he was denied his right of confrontation and the testimony should be excluded.

Under Rule 804(b)(1), a witness' former testimony is admissible if the party against whom the testimony is now offered had an opportunity and similar motive to develop testimony by direct, cross, or redirect examination.[11] In *United States v. Salerno*, the Supreme Court held that a party may not introduce former testimony under Rule 804 without showing similar motive. 505 U.S. 317 (1992). Because similar motive does not mean identical motive, this inquiry is inherently factual, depending in part on the similarity of the underlying issues and on the context of the

---

[11] Rule 804(b) reads:

> Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

21

questioning. *Id.* at 326 (Blackmun, J., concurring). While the availability of foregone cross-examination opportunities is one factor to consider, it is not conclusive because examiners will frequently be able to suggest lines of questioning that were not pursued at a prior proceeding. *United States v. DiNapoli*, 8 F.3d 909, 914 (2nd Cir. 1993).

At both trials, the government offered Montcalm's testimony to prove Miles involvement in a methamphetamine conspiracy. While the district court dismissed some of the interrelated conspiracies at the first trial, Montcalm's testimony was offered to show Miles' relationship to the methamphetamine laboratory in Atlanta. Even though the government offered a broader theory of conspiracy, Miles' motive to cross-examine Montcalm was similar in both trials.

Miles argues that his case is analogous to *United States v. Wang,* 964 F.2d 811 (8th Cir. 1992), in which the Eighth Circuit upheld a district court's grant of a new trial. In *Wang*, the government initially filed a criminal complaint charging the defendant with conspiracy to harbor illegal aliens; however, the government later indicted the defendant for the substantive offense of harboring illegal aliens. *Id.* at 812. At trial, the government introduced the illegal aliens' videotaped deposition testimony. *Id.* The defendant and her attorney were present at the depositions and had an opportunity to cross-examine the witnesses. *Id.* However, the district court

granted the defendant's motion for a new trial finding that the defendant's Sixth Amendment right to cross-examination had been violated. *Id.* According to the district court, the depositions took place while the defendant faced the conspiracy charge rather than the substantive offense. *Id*. Because these respective crimes involved different elements, the district court found that introducing the prior testimony denied Wang the right of effective cross-examination guaranteed by the Sixth Amendment's confrontation clause. *Id.*

*Wang* is distinguishable on two grounds. First, the *Wang* court reviewed a district court's decision to grant a new trial based on the admission of testimony. In the case at bar, our task is to determine whether the district court abused its discretion in admitting the former testimony; therefore, these cases are procedurally inapposite. Second, Miles faced methamphetamine conspiracy charges in both trials, and Montcalm's testimony illustrated Miles' relationship with the Atlanta laboratory, an issue pertinent to the charges in both trials. It is clear that Miles had precisely the same interest in attacking Montcalm's testimony at the retrial as he had at his first trial. We find that the district court did not abuse its discretion in admitting Montcalm's former testimony.

E.     **Good-Faith Reliance Instruction**

The defendant argues that the district court erred when it failed to instruct the

jury on the defense of good-faith reliance upon the advice of counsel as it related to the money laundering count. The evidence at trial established that Miles went to the office on attorney Don Nelson to discuss purchasing a piece of property. Miles had a briefcase full of cash. Co-conspirator Jimmy Davis went to Nelson's office and took the case to a bank and converted it into cashier's checks. Nelson then deposited the checks into his escrow account and drew out a single cashier's check in the amount of $60,000. Nelson testified that he briefly represented Miles in 1985, 1987, and 1988.

We review the district court's failure to provide additional jury instructions for abuse of discretion. *United States v. Morales*, 978 F.2d 650, 652 (11th Cir. 1992). As long as there is some foundation in the evidence and legal support, the jury should be instructed on a theory of the defense. *United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir. 1987). "We will reverse a trial judge's refusal of a requested instruction only if the rejected instruction was substantively correct, the actual charge to the jury did not substantially cover the proposed instruction, and the failure to give it substantially impaired the defendant's ability to present an effective defense." *Id.*

To be entitled to a good-faith reliance instruction, a defendant must show that he fully disclosed all material facts to his attorney and that he relied in good faith on

24

his attorney's advice. *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998). The district court should not give this instruction if it lacks evidentiary support or is based on mere suspicion or speculation. *Id.* (quoting *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir.1994)). The record shows that the defendant did not seek Nelson's advice and Nelson did not give any advice. Furthermore, Nelson acted as Miles' co-conspirator in the transaction – not as the defendant's attorney. Therefore, the defendant was not entitled to a good-faith reliance instruction, and the district court did not abuse its discretion in failing to instruct the jury on this defense.[12]

## F. Sufficiency of the Evidence

Miles alleges that there was insufficient evidence for a jury to convict on

---

[12] The government also argues that the defendant's requested instruction was already addressed in the district court's charge on specific intent. The district court charged:

> The crimes charged in this case are serious crimes which require
> proof of specific intent before the defendant can be convicted.
> Specific intent, as the term implies, means more than the general
> intent to commit the act. To establish specific intent the
> government must prove that the defendant knowingly did an act
> which the law forbids, purposely intending to violate the law.
> Such intent may be determined from all the facts and
> circumstances surrounding the case.

In *United States v. Walker*, 26 F.3d 108 (11th Cir. 1994), this court affirmed a fraud conviction where the defendants appealed the district court's refusal to instruct the jury on the good-faith reliance on counsel defense. In *Walker*, we held that a finding of specific intent to deceive excludes a finding of good faith. *Id.* at 110. In the case before us, a jury found that the defendant knowingly and purposely violated the law. Therefore, a good faith instruction would have been superfluous.

Count Twelve of the indictment. Count Twelve charged that Miles and his sister, Francis Miles Garland, engaged in financial transactions with the intent to conceal the nature, source, and ownership of Miles' drug proceeds in violation of the money laundering statute, 18 U.S.C. § 1956.[13] In order to prove money laundering, the government must show that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of a statutorily specified unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) the defendant knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds. 18 U.S.C. § 1956(a)(1)(B)(i). Miles argues that the government failed to prove that he knew the purpose of the transaction was to conceal the nature of his drug proceeds.

The evidence at trial showed that Garland purchased a home, but she continued to live in rental property while her brother lived at the home. While

---

[13] 18 U.S.C. § 1956(a)(1)(B)(i) provides:
> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" violates the statute.

living in the house titled to Garland, the defendant paid for the materials for certain home improvements including the installation of a swimming pool and the addition of four rooms.  Garland testified that she paid $636 per month on the house note and that Miles paid her the same amount in cash for rent.  The government showed that Garland claimed the mortgage on her income tax return between 1984 and 1987 yet failed to claim the rental income.  At trial, the government introduced three phone conversations between Garland and the defendant where Garland asked how to handle the housing transactions on her tax returns.  The government argues that this fact allowed the jury to infer that Garland's motive in handling the living arrangements was for Miles' benefit.

Whether there is sufficient evidence to support the jury's verdict is a question of law that we review de novo.  *United States v. Harris*, 20 F.3d 445, 452 (11th Cir.1994).  We will affirm a jury's verdict if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt.  *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001).  In determining a sufficiency of the evidence claim, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor.  *United States v. Battle*, 892 F.2d 992, 999 (11th Cir. 1990).

> It is not necessary that the evidence exclude every
> reasonable hypothesis of innocence or be wholly

27

> inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence.

*Id.* at 998 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982)).

In *United States v. Majors*, 196 F.3d 1206, 1213 (11th Cir. 1999), this court distinguished the crime of money laundering from the legal activity of "money spending." In *Majors*, we reasoned that

> [b]ecause the statute is aimed at transactions that are engaged in for the purpose of concealing assets, "[m]erely engaging in a transaction with money whose nature has been concealed through other means is not in itself a crime . . . [i]f transactions are engaged in for present personal benefit, and not to create the appearance of legitimate wealth, they do not violate the money laundering statute."

*Id.* (quoting *United States v. Garcia-Emanuel*, 14 F.3d 1469 (10th Cir. 1994)). Evidence that supports a finding that the transaction was intended to conceal includes "unusual secrecy surround[ing] the transaction, structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business, highly irregular features of the transaction, [and] using third parties to conceal the real owner." *Id.* at 1213 n.18. In upholding the conviction in *Majors*, this court found the defendant used third parties to disguise the source of funds. *Id.* at 1214. In the present case, the defendant employed his sister to sanitize

28

his drug proceeds. After Miles paid his sister in cash, Garland would deposit the cash into her checking account and write the check for the mortgage. This evidence is sufficient for a reasonable jury to return a guilty verdict.

III.    Conclusion

For the foregoing reasons, we VACATE in part, and AFFIRM in part. This case is REMANDED for proceedings consistent with this opinion.