[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15498
Non-Argument Calendar

_____

D. C. Docket No. 06-00472-CR-T-17-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL A. RENDON,
a.k.a. Coco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 28, 2009)

Before BLACK, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Miguel A. Rendon appeals his conviction for conspiracy to distribute cocaine, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Rendon asserts the district court abused its discretion when it (1) admitted out-of-court statements by co-conspirators under Federal Rule of Evidence 801(d)(2)(E) because those statements were not in furtherance of the conspiracy, and (2) admitted testimony regarding a suicidal gesture Rendon made during an interview with law enforcement because its probative value was substantially outweighed by the danger of unfair prejudice. We address each issue in turn, and affirm Rendon's conviction.

I.

Out-of-court statements offered in evidence to prove the truth of the matter asserted are generally inadmissible as hearsay. Fed. R. Evid. 801(c), 802. An out-of-court statement, however, is not hearsay if it is offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). As a prerequisite to the admission of a co-conspirator's statement, the Government, as the proponent, "must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the

2

conspiracy." *United States v. Underwood*, 446 F.3d 1340, 1345–46 (11th Cir. 2006). We apply "a liberal standard in determining whether a statement is made in furtherance of a conspiracy. The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002) (internal citation and quotation marks omitted). "[I]f the statement could have been intended to affect future dealings between the parties, then the statement is in furtherance of the conspiracy." *United States v. Caraza*, 843 F.2d 432, 436 (11th Cir. 1988) (internal quotation marks omitted).

In general, the out-of-court statements made by co-conspirators Jose Ibarra and Pedro Medina-Villegas to other co-conspirators communicated Rendon's role in the conspiracy. These communications helped maintain good working relations among the co-conspirators and therefore furthered the conspiracy. *Id.* For example, Medina-Villegas's statement to his daughter about Rendon's drug customers could have reassured her of Rendon's role in the conspiracy, and his statements to his son about a loan from Rendon, or to his daughter about Rendon's demand for money for an erroneously delivered package, could have provided guidance about how those co-conspirators should deal with Rendon, reducing the risk of a confrontation that would derail the conspiracy. Likewise, Medina-

3

Villegas's statements to co-conspirator Jose Luis Sandoval-Ochoa about the amount of marijuana Medina-Villegas received and unloaded at Rendon's property could have been a tool to encourage Sandoval-Ochoa to take a larger role in the conspiracy (which he eventually did).

Finally, although not made to maintain good working relations among the co-conspirators, Medina-Villegas's statement to a buyer about where the marijuana was grown furthered the conspiracy by helping influence the buyer to pay a higher price. Given the liberal standard for determining when a statement furthers the conspiracy, we conclude the district court did not err[1] by admitting the statements because they maintained the functioning of the conspiracy. *Miles*, 290 F.3d at 1351.

## II.

Under the Federal Rules of Evidence, all relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Nonetheless, relevant evidence may be excluded if "its probative value is

---

[1] The parties dispute the appropriate standard of review as to the challenged evidentiary rulings in this case. Because we conclude there was no error as to either issue on appeal, the standard of review is not outcome determinative, and we need not determine whether we review the district court's rulings for abuse of discretion or plain error.

4

substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 117 S. Ct. 644, 650 (1997).

Rule 403, however, is "an extraordinary remedy which the district court should invoke sparingly, and [t]he balance . . . should be struck in favor of admissibility." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (internal quotation marks omitted; alternation in original). "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (internal quotation marks omitted). "The major function of Rule 403 is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991) (internal quotation marks omitted).

In this case, the testimony regarding Rendon's suicidal gesture to a law enforcement officer had probative value because the gesture suggested Rendon wanted to avoid explaining incriminating evidence, which indicated he did not have an exculpatory explanation. This probative value was not substantially

5

outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, and thus the

district court did not err in admitting the testimony regarding Rendon's suicidal

gesture.  Accordingly, we affirm Rendon's conviction.

**AFFIRMED.**

6