[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13352

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

*versus*

LEON WILLIAMS,
REGINALD JONES, JR.,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00573-SDM-AAS-3

_____

Before ROSENBAUM, GRANT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Leon Williams and Reginald Jones, Jr. appeal their convictions for conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana (in violation of 21 U.S.C. § 846) and for using, carrying, and discharging a firearm in furtherance of a drug-trafficking offense (in violation of 18 U.S.C. § 924(c)(1)(A)(iii)). No reversible error has been shown; we affirm.

Briefly stated, Williams's and Jones's convictions stem from their membership in a gang and from a gang-related shooting in May 2018. Williams and Jones are members of a gang known as the "Bird Gang" or the "Wayne Gang." At the time of the shooting, the gang had been the subject of a months-long investigation by police for drug-trafficking activities in and around the Tampa Park neighborhood in Florida. The gang's drug activities operated chiefly out of a rooming house known as the "Blue House."

The Blue House was owned by a woman named Ms. Roberts. On the day of the shooting, several Bird Gang members confronted a son of Ms. Roberts and accused him of snitching on them to the police. Later that day, Ms. Roberts and her two adult sons arrived at the Blue House and attempted to remove the gang members from the property. A gunfight erupted during which Williams and Jones each had a gun and each shot at the Roberts family.

20-13352               Opinion of the Court                    3

During the incident, Williams suffered a gunshot wound and was driven to the hospital by a fellow gang member.

## I.

On appeal, Williams contends that the district court abused its discretion by admitting into evidence six rap music videos and song lyrics, which Williams describes as referencing "drugs, guns, misogyny, and avoiding law enforcement." Williams says he did not write, sing, or produce the rap songs and videos. He argues that -- although the music videos and lyrics had "some relevance" -- their admission was unfairly prejudicial under Fed. R. Evid. 403.[1]

We review for abuse-of-discretion a district court's evidentiary rulings.[2] *See United States v. Dodds*, 347 F.3d 893, 897 (11th

---

[1] Williams also says that the videos constituted improper character evidence that should have been excluded under Fed. R. Evid. 404(a)(1). This passing reference -- made without substantive argument or citation to authority -- is insufficient to raise properly this issue on appeal. *See United States v. Stein*, 846 F.3d 1135, 1151 n.15 (11th Cir. 2017) (explaining that a passing reference to an argument, without reasoned analysis, is insufficient to preserve that argument on appeal).

[2] The government contends that Williams's Rule 403 argument should be reviewed only for plain error. At trial, Williams objected to the introduction of the rap videos because Williams did not appear in one of the videos and because it would be "prejudicial . . . to show these videos in which Mr. Williams does not appear, obviously, with any firearms." The government says this objection about Williams's participation in the videos was inadequate to preserve for appeal Williams's argument that the content of the rap videos was

Cir. 2003). A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. We have said, however, that "Rule 403 is an extraordinary remedy which the district court should invoke sparingly." *Dodds*, 347 F.3d at 897 (quotations omitted). In considering admissibility under Rule 403, we view "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* We will find abuse of discretion only if the district court's decision to admit evidence over a Rule 403 challenge is "unsupportable." *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003).

In *United States v. Smith*, we concluded that the district court abused no discretion in permitting the government to introduce a rap video featuring the defendant. 967 F.3d 1196 (11th Cir. 2020). We recognized that the video and lyrics "glorifie[d] violence, creating the risk that the jury would view [the defendant] as a violent criminal . . . and convict him for that reason instead of based on the evidence at trial." *Id.* at 1205. Nevertheless, we determined that the potential for unfair prejudice was outweighed by the video's significant probative value for deciding contested issues. *Id.* at 1205-06 (noting that the video corroborated the victim's testimony that the man who robbed her was a rapper and used a pistol during the robbery; the video also connected the defendant

---

unduly prejudicial. Because we conclude that the district court committed no error -- plain or otherwise -- we need not address the adequacy of Williams's trial objection.

to other robberies because the jury could compare the appearance of the pistol shown in the rap video to the pistol used in the surveillance footage from the other robberies).

Here, the district court abused no discretion in allowing the government to introduce the challenged music videos and song lyrics. Like the video in *Smith*, the videos and song lyrics in this case glorify criminal conduct and might create some potential for unfair prejudice; but the risk of unfair prejudice was outweighed by the videos' probative value.

The music videos -- which contain references to the Bird Gang and in which Williams and Jones appear alongside other Bird Gang members -- were highly probative of contested issues at trial: the existence of the Bird Gang and of Williams's and Jones's affiliation with the gang and with their fellow gang members. The music videos were also probative of the gang's established territory. Among other things, the videos included several scenes filmed in and around the Blue House: the location of the gang's chief drug operations and the location of the shooting incident underlying the charged firearm offense. The videos also contradicted Williams's statements to police (1) denying his involvement in the May 2018 shooting, (2) claiming that he was merely a bystander that was shot while passing the Blue House on his way to the store, and (3) claiming that the man who drove Williams to the hospital (a fellow gang member who also appeared in the rap videos) was a stranger to him.

Moreover, the district court minimized the potential for unfair prejudice by instructing the jurors that Williams and Jones were on trial only for the two charged offenses and not for conduct shown in the videos, even if the jurors might find parts of the videos offensive, profane, or vulgar. *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (noting that the district court's limiting instruction reduced the risk of undue prejudice).

On appeal, Williams relies chiefly on our decision in *United States v. Gamory*, 635 F.3d 480 (11th Cir. 2011), in which we concluded that the district court abused its discretion in admitting into evidence a rap video that had been produced at the defendant's recording studio. The circumstances in *Gamory*, however, are materially different from the circumstances presented in this appeal. In finding an abuse of discretion in *Gamory*, we stressed two facts: (1) that the defendant did not appear in the video and (2) that the video was introduced at the end of the government's case and was cumulative of other evidence already presented. *See* 635 F.3d at 493. Given those circumstances, we said that the probative value of the video was "minimal at best" and was substantially outweighed by the risk of unfair prejudice. *Id.*

Neither of the two critical facts involved in *Gamory* are present in this case. The challenged rap videos featured Williams and Jones. The videos were also introduced at the beginning of the government's case to establish contested facts pertinent to proving the charged conspiracy and were not cumulative of other evidence already presented at trial.

Williams also says that the videos had an unduly prejudicial effect because they were played for an "all-white jury" that was likely to "misunderstand the cultural underpinnings of rap music." Williams, however, cites to nothing in the record demonstrating the racial make-up of the jury and no evidence demonstrating the jurors' appreciation of or experience (or lack thereof) with rap music.

On this record, we cannot say that the risk of unfair prejudice outweighed the probative value of the challenged evidence or say that the district court's evidentiary ruling was "unsupportable." The district court abused no discretion in allowing the government to introduce the music videos and song lyrics.

## II.

Jones argues that the district court abused its discretion by admitting into evidence a wiretap recording of a phone call. As part of the ongoing investigation into the Bird Gang's drug-trafficking, the police set up a wire on the phone of Sheldon Lillie: a known drug supplier for the Bird Gang who conducted routinely between 15 to 20 drug transactions per day near the Blue House. In the recorded phone call presented at trial, a person named "Rondo" told Lillie that "Reggie" wanted to get an "ounce" of the "really good shit."

Jones says the recording constituted inadmissible hearsay under Fed. R. Evid. 801(d)(2)(E). Jones contends that the government introduced no extrinsic evidence demonstrating that the

phone call related to the charged conspiracy or that the call was made in furtherance of the charged conspiracy. In particular, Jones says the government failed to show (1) who "Rondo" was; (2) that Jones was the "Reggie" mentioned in the phone call; and (3) that an "ounce" referred to one of the drugs charged in the conspiracy.

A statement offered against a party is not considered hearsay -- and is thus not subject to exclusion -- if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(d)(2)(E). A statement is admissible under Rule 801(d)(2)(E) if the government proves "(1) that a conspiracy existed; (2) that the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). In examining these factors, "the district court may rely on information provided by the co-conspirator's proffered statement as well as independent external evidence." *Id.*

We apply "a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *Id.* "A district court's determination that a statement was made in furtherance of a conspiracy is a finding of fact subject to a clearly erroneous standard of review." *Id.*

The district court abused no discretion in admitting the wiretap recording into evidence. First, the government presented ample evidence of the existence of a drug conspiracy involving Jones and other Bird Gang members, including evidence of police

surveillance of drug sales near the Blue House, controlled drug buys in and around the Blue House, references to the Bird Gang on social media, rap videos featuring Jones and promoting the existence of the Bird Gang, and witness testimony that Jones fired a gun during the shooting at the Blue House.

About the identity of the persons referenced in the recorded call, the government presented witness testimony that "Rondo" was a nickname for two Bird Gang members and that "Reggie" was Jones's nickname. An agent with the Federal Bureau of Investigation also testified -- based upon her experience and her familiarity with the drugs that Lillie and the Bird Gang typically sold -- that the phone call referenced "an ounce of crack cocaine": one of the drugs charged in the indictment.

This evidence adequately supports a finding that the recorded statement was a statement made during and in furtherance of the charged conspiracy. Jones's assertion that there might be other people with the nicknames "Rondo" and "Reggie" or an alternative meaning for the word "ounce" are arguments that go to the weight of the evidence, not to admissibility.

We affirm Jones's and Williams's convictions.

AFFIRMED.